**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------- x

| | | |
|---|---|---|
| SUSAN LEVY, | : | |
| | : | |
| Plaintiff, | : | Case No. 13-CV-1858 (WHP) (JCF) |
| | : | |
| v. | : | ECF Case |
| | : | |
| JOSEPH WELSH, et al., | : | |
| | : | |
| Defendants. | : | |

-------------------------------------------------------- x

**DEFENDANTS CME GROUP INC.'S AND NEW YORK MERCANTILE EXCHANGE,**
**INC.'S REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS**


Dated: June 27, 2014

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
Charles F. Smith, *pro hac vice*
(charles.smith@skadden.com)
Jason T. Manning, *pro hac vice*
(jason.manning@skadden.com)
Brandon R. Keel, *pro hac vice*
(brandon.keel@skadden.com)
155 North Wacker Drive
Chicago, IL 60606
Tel: 312.407.0700
Fax: 312.407.0411

Lauren E. Aguiar
(lauren.aguiar@skadden.com)
Four Times Square
New York, NY 10036
Tel: 212.735.2235
Fax: 917.777.2235

*Counsel for Defendants CME Group Inc. and*
*New York Mercantile Exchange, Inc.*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT .................................................................................... 1

ARGUMENT ................................................................................................................. 2

I.      PLAINTIFF CANNOT STATE A CLAIM AGAINST CMEG SOLELY AS THE HOLDING COMPANY OF NYMEX ................................................................... 2

II.    PLAINTIFF'S CEA CLAIMS FAIL BECAUSE SHE HAS NOT PLED ANY FACTS TO SHOW THAT NYMEX ACTED IN BAD FAITH. ...................................... 3

        A.     Plaintiff Has Not Stated A Claim For Constructive Bad Faith. .............................. 4

        B.     Plaintiff Has Not Pled Facts Showing That NYMEX Was Aware Of The Manipulative Conduct And That It Acted With An Ulterior Motive. .................... 5

III.   PLAINTIFF'S VICARIOUS LIABILITY CLAIMS FAIL BECAUSE THE UNNAMED FLOOR BROKERS ARE NOT NYMEX'S AGENTS. ............................... 7

IV.   PLAINTIFF'S NON-CEA CLAIMS AGAINST THE CMEG DEFENDANTS ARE LEGALLY DEFICIENT. .......................................................................... 9

CONCLUSION ............................................................................................................. 10

## TABLE OF AUTHORITIES

### CASES

*In re Amaranth Natural Gas Commodities Litigation*,
   587 F. Supp. 2d 513 (S.D.N.Y. 2008)............................................................8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...................................................................................7

*Brawer v. Options Clearing Corp.*,
   807 F.2d 297 (2d Cir. 1986)...............................................................4, 5, 7

*CFTC v. Byrnes*,
   13 Civ. 1174 (VSB) (S.D.N.Y. filed Feb. 21, 2013) ........................................8

*DGM Investments, Inc.  v. New York Futures Exchange*,
   No. 01 Civ. 11602 (RWS), 2002 WL 31356362 (S.D.N.Y. Oct. 17, 2002) ......................5

*DGM Investments, Inc. v. New York Futures Exchange, Inc.*,
   265 F. Supp. 2d 254 (S.D.N.Y. 2003)...............................................2, 3, 5, 6, 7

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*,
   456 U.S. 353 (1982)...................................................................................5

*Miller v. Pacific Management Co.*,
   No. 12-CV-4122-LTS-JCF (S.D.N.Y. Apr. 23, 2013) ......................................3

*Sam Wong & Son, Inc. v. New York Mercantile Exchange*,
   735 F.2d 653 (2d Cir. 1984)........................................................................7

*Vitanza v. Board of Trade of City of New York*,
   No. 00 CV 7393 (RCC), 2002 WL 424699 (S.D.N.Y. Mar. 18, 2002)............................5

*Western Capital Design, LLC v. New York Mercantile Exchange*,
   180 F. Supp. 2d 438 (S.D.N.Y. 2001)............................................................5

### STATUTES

7 U.S.C. § 2(a)(1)(B) ..................................................................................2

7 U.S.C. § 25(b) .....................................................................................1, 5

Futures Trading Act of 1982, Pub. L. No. 97-444, 96 Stat. 2294 (1983).......................5

The CMEG Defendants[1] jointly submit this reply memorandum in support of their motion to dismiss Plaintiff's Amended Complaint.

## PRELIMINARY STATEMENT

Section 22(b)(4) of the CEA bars claims against exchanges for trading losses except in cases where the exchange "acted in bad faith in failing to take action or in taking such action as was taken, and [] such failure or action caused the loss." *See* 7 U.S.C. § 25(b)(4). Absent well-pled allegations that NYMEX knowingly permitted the Moore Defendants to manipulate platinum prices in order to further NYMEX's own self-interest or other ulterior motive, Plaintiff's CEA claims must be dismissed. (*See* Defendants CME Group Inc.'s and New York Mercantile Exchange, Inc.'s Memorandum of Law in Support of Their Motion to Dismiss, Mar. 31, 2014 (Dkt. No. 92) ("Defs.' Mem.") at 8-14.) Plaintiff's response tacitly concedes that her Amended Complaint does not directly allege facts sufficient to support a "bad faith" claim.

Instead, Plaintiff contends that this Court can infer that NYMEX acted in bad faith based on her allegation that manipulation occurred and that NYMEX failed to stop or prevent it. (*See* Plaintiff's Memorandum of Law in Opposition to the Defendants' Motion to Dismiss the First Amended Complaint, June 4, 2014 (Dkt. No. 103) ("Pl.'s Opp'n") at 46-47.) Plaintiff's assertion that she can plead bad faith simply by alleging manipulation has been consistently rejected, including by the cases that she cites. (*See* Defs.' Mem. at 11-12.)

Plaintiff also contends that she can plead bad faith by claiming that (1) NYMEX had "constructive knowledge" of the allegedly manipulative activity because NYMEX is aware of every single trade that occurs on the exchange and has the ability to monitor trader

---

[1]    Unless otherwise indicated, capitalized terms used herein have the same meaning as in the CMEG Defendants' opening brief.

conversations, and (2) NYMEX must have had an ulterior motive to allow price manipulation on its exchange because NYMEX collects a fee for trading on the exchange. (Pl.'s Opp'n at 48-53.) Again, Plaintiff's theories lack any legal support and have been rejected by prior rulings. If Plaintiff's strained theories were correct, the bad faith standard would be satisfied every time that a trader sued an exchange for failing to prevent manipulation because the two "factors" that Plaintiff relies upon are present for all trading on the exchange—they have nothing to do with her specific allegations here.

Plaintiff's alternative theory of liability against the CMEG Defendants—that they are liable for the conduct of the unnamed floor brokers—is equally without merit. Plaintiff attempts to avoid dismissal by arguing that she has raised a question of fact as to whether the individuals who executed trades on behalf of the Moore Defendants are NYMEX employees. Her Amended Complaint, however, contains no factual allegations to support this theory. Plaintiff's contention is based on complete speculation—she has even admitted that she does not know who the floor brokers work for. (*See* Defs.' Mem. at 16-17.) Plaintiff also fails to address the numerous authorities that have correctly recognized that floor brokers who execute trades on an exchange are not employees or agents of the exchange. (*See id.*) For these and the other reasons discussed below, Plaintiff has failed to state a claim against the CMEG Defendants.

## ARGUMENT

## I.    PLAINTIFF CANNOT STATE A CLAIM AGAINST CMEG SOLELY AS THE HOLDING COMPANY OF NYMEX.

Plaintiff responds to the CMEG Defendants' argument that CMEG is not a proper party to this suit by claiming that their position "is belied by the mandatory vicarious liability provision of 7 U.S.C. § 2(a)(1)(B) as well as *binding precedent*." (Pl.'s Opp'n at 54 (citing *DGM Invs., Inc. v. N.Y. Futures Exch., Inc.*, 265 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (emphasis

added).) In doing so, Plaintiff misrepresents the authority that she cites. Plaintiff states that in *DGM Investments* the "[c]ourt imposed vicarious liability on parent company NYBOT over co-defendant, New York Clearing Corp. specifically holding that a parent company would be held strictly liable for the actions of its subsidiaries who were acting as its agents." (*Id.*) The court held no such thing. Rather, the court found that the New York Futures Exchange, Inc. could be held responsible under agency principles for the conduct of its ***chairman*** as long as that conduct was within the scope of the chairman's position. *DGM Invs.*, 265 F. Supp. 2d at 262.

Contrary to Plaintiff's argument, a holding company cannot be held liable solely for the conduct of its subsidiary. (Defs.' Mem. at 7-8.) Just last year a court in this district dismissed a claim against CMEG for this very reason. (*Id.* at 8 (citing *Miller v. Pac. Mgmt. Co.*, No. 12-CV-4122-LTS-JCF, at 8-9 (S.D.N.Y. Apr. 23, 2013).) Plaintiff does not attempt to address that authority, and she also fails to address the other reasons why CMEG is not a proper party to this case—i.e., because it is not a designated contract market and was not NYMEX's parent company at the time of the alleged conduct. (Defs.' Mem. at 8.) CMEG should be dismissed from the case with prejudice.

## II. PLAINTIFF'S CEA CLAIMS FAIL BECAUSE SHE HAS NOT PLED ANY FACTS TO SHOW THAT NYMEX ACTED IN BAD FAITH.

In her Amended Complaint, Plaintiff advanced four theories as to why she believed that NYMEX acted in bad faith. (*See* Defs.' Mem. at 10-12.) Plaintiff abandoned two of those bases in her opposition.[2] Her remaining theories find no support in the law.

---

[2] Plaintiff has abandoned her contentions that bad faith is established based on her allegations that the SRO model has failed and based on the alleged relationship between Joseph Niciforo and Christopher Pia. Plaintiff did not address this first theory in her opposition, and she made only one reference to the second theory, which did not attempt to address the CMEG Defendants' motion. (*See* Defs.' Mem. at 10-12; Pl.'s Opp'n at 54 n.16.)

A.      **Plaintiff Has Not Stated A Claim For Constructive Bad Faith.**

Plaintiff argues that she has established "constructive bad faith" based on her allegation that NYMEX failed to prevent "blatant NYMEX rule violations . . . occurring on over 214 days." (Pl.'s Opp'n at 47.) Essentially, Plaintiff contends that this Court can infer that NYMEX acted in bad faith in failing to prevent manipulation based solely on her allegation that manipulation occurred. (*Id.* at 46-47.) This "constructive bad faith" theory is based entirely on dicta from a footnote in one Second Circuit case, and even that dicta does not support Plaintiff's position.

In *Brawer v. Options Clearing Corp.*, 807 F.2d 297 (2d Cir. 1986), the plaintiff brought suit against a securities exchange alleging that the exchange was liable for losses that were allegedly caused by the exchange refusing to adjust securities options in light of announcements about a hostile takeover for the company issuing the underlying securities. *Id.* at 299-301. The plaintiff argued, in part, that he could state a claim for bad faith by showing that the exchange responded differently to two announced transactions that were essentially the same. *Id.* at 303. The Second Circuit rejected the plaintiff's argument, finding that he had failed to plead any facts to show that the exchange acted in bad faith. *Id.* In a footnote, however, the Second Circuit noted that it might be possible to state a claim for bad faith based on an exchange's arbitrary and disparate treatment of essentially identical transactions. *Id.* at 303 n.9 ("We do not mean to foreclose the possibility that disparate treatment of essentially identical financing schemes might be so arbitrary as to constitute constructive bad faith.").

*Brawer* does not support Plaintiff's contention that she has stated a claim for "constructive bad faith" in this case. Although the Second Circuit left open the possibility that such a claim **might** exist based on an exchange's "disparate treatment of essentially identical" transactions, that is not what Plaintiff is alleging here. Plaintiff contends that NYMEX failed to detect and prevent manipulation, not that it responded in an arbitrary and disparate manner to

two identical situations. No court has extended the dicta from *Brawer* to find that "constructive bad faith" can be based on allegations of manipulation alone. In fact, the only other case that Plaintiff cites expressly rejected the same argument that she proffers here. *See DGM Invs.*, 265 F. Supp. 2d at 260 (finding that courts in this district have repeatedly rejected the argument that even "a willful disregard of information concerning manipulation is adequate to show bad faith") (citing *W. Capital Design, LLC v. N.Y. Mercantile Exch.*, 180 F. Supp. 2d 438, 442 (S.D.N.Y. 2001); *Vitanza v. Bd. of Trade of the City of N.Y.*, No. 00 CV 7393 (RCC), 2002 WL 424699, at *1 (S.D.N.Y. Mar. 18, 2002); *DGM Invs., Inc. v. N.Y. Futures Exch.*, No. 01 Civ. 11602 (PWS), 2002 WL 31356362, at *3 (S.D.N.Y. Oct. 17, 2002)). An inference of bad faith cannot be drawn based solely on allegations that the manipulative conduct occurred and that it would have been "virtually impossible to miss" (Pl.'s Opp'n at 47). *See DGM Invs.*, 265 F. Supp. 2d at 260.[3]

### B. Plaintiff Has Not Pled Facts Showing That NYMEX Was Aware Of The Manipulative Conduct And That It Acted With An Ulterior Motive.

As an alternative to her "constructive bad faith" theory, Plaintiff claims that she has satisfied the actual bad faith standard. (Pl.'s Opp'n at 48-53.) She recognizes that this standard requires her to show that NYMEX had knowledge of the allegedly manipulative conduct and that NYMEX refused to stop it because of an ulterior motive. (*Id.* at 48.) She then argues that she has met this hurdle by claiming that NYMEX has knowledge of everything that happens on the exchange and that it has an ulterior motive to permit manipulation in order to increase trading fees. Plaintiff is wrong.

---

[3]   Plaintiff's contention that it is possible to state a claim against an exchange for negligence in light of *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 359 (1982) is completely inaccurate. Plaintiff not only misreads *Curran*, but she also fails to recognize that 7 U.S.C. § 25(b) was enacted after that ruling, specifically providing that no claim exists against an exchange without establishing bad faith. *See* Futures Trading Act of 1982, Pub. L. No. 97–444, 96 Stat. 2294 (1983).

Plaintiff's "knowledge" argument is similar to her "constructive bad faith" argument, as she contends that the Court can infer that NYMEX "had knowledge of each and every manipulative trade" conducted on the exchange. (*Id.* 48-50.) She claims that NYMEX should be charged with "actual knowledge" of every manipulative trading scheme because NYMEX acts as a clearing house for trading on the exchange and because it has the ability to record and listen to traders' conversations. (*Id.*) Plaintiff cites no authority indicating that an exchange can be charged with this knowledge.[4]

Moreover, Plaintiff nearly ignores the fact that she repeatedly alleges in her Amended Complaint that NYMEX was not aware of the allegedly manipulative trading when it occurred. (*See* Defs.' Mem. at 9.) Plaintiff suggests (in a footnote) that she pled "in the alternative" that NYMEX became aware of the conduct on April 29, 2010 *or sooner*. (Pl.'s Opp'n at 49 n.13.) But Plaintiff claims that the manipulative trading ceased in the fall of 2008, and thus her "alternative" allegation that NYMEX learned of this conduct on "April 29, 2010 or sooner" does not show that NYMEX was aware of the conduct as it was occurring. That is particularly true in light of the fact that Plaintiff's Amended Complaint contains several other allegations that NYMEX was unaware of the manipulative trading when it was occurring. (*See* Defs.' Mem. at 9.) Plaintiff alleges that NYMEX missed the manipulative scheme, not that it was complicit in it. And her one allegation that NYMEX may have learned of the conduct at some point prior to April 29, 2010 (but not necessarily when it was occurring) does not satisfy the Supreme Court's plausibility pleading standards. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 680-81 (2009).

---

[4]   Plaintiff cites only one case—*DGM Investments*—in this section of her opposition. As noted above, that opinion does not support Plaintiff's claim.

Plaintiff's "ulterior motive" argument based on NYMEX's collection of transaction fees also has been rejected by the very authorities that she cites. In order to plead that NYMEX possessed an ulterior motive, Plaintiff's Complaint must contain a well-pled "allegation of personal profiting . . . or payoff, or secret motive *outside the parameters of the duties imposed on the [exchange]*." *DGM Invs.*, 265 F. Supp. 2d at 261 (emphasis added; ellipses in original) (quotations and citation omitted). No such allegation is present here. An exchange's collection of transaction fees for trading is not outside the parameters of the duties imposed on an exchange and is insufficient to state a claim for bad faith failure to prevent manipulation. *See*, *e.g.*, *Brawer*, 807 F.2d at 303 (rejecting plaintiff's claim that an exchange's ulterior motive could be based on its incentive to "generate increased trading volumes and revenues"). In rejecting an identical argument, the Second Circuit explained that "'[i]f such a degree of self-interest were allowed to demonstrate bad faith, then exchange board members … would inevitably be subject to bad-faith charges, and the concept of exchange self-regulation would be undermined.'" *Id.* (citing *Sam Wong & Son, Inc. v. N.Y. Mercantile Exch.*, 735 F.2d 653, 672 (2d Cir. 1984)) (alteration and ellipses in original).

## III.   PLAINTIFF'S VICARIOUS LIABILITY CLAIMS FAIL BECAUSE THE UNNAMED FLOOR BROKERS ARE NOT NYMEX'S AGENTS.

Aside from her claim for failure to prevent or stop manipulation, all of Plaintiff's claims against the CMEG Defendants are based on the conduct of the unnamed floor brokers.[5] Plaintiff argues that, at a minimum, she has created a question of fact as to whether the floor brokers are

---

[5]   Plaintiff has abandoned her claim that the CMEG Defendants can be held directly liable for publishing the settlement prices (as they are required to do by the CEA). (*See* Defs.' Mem. at 14-15.) Plaintiff also abandoned whatever claim she was making based on the conduct of the unnamed floor clerks, which she does not even mention in her opposition.

NYMEX's agents and, thus, the motion to dismiss these claims should be denied. But Plaintiff's Amended Complaint contains no facts to create such a dispute.

Plaintiff's vicarious liability claims are based on pure speculation. She believes (incorrectly) that all of the brokers executing trades on the floor of NYMEX are NYMEX's employees. But she does not identify any factual basis for this belief, nor could she, as the floor brokers are not NYMEX's employees or agents. Numerous courts have recognized that floor brokers executing trades on an exchange are not exchange employees or agents—they are traders who execute trades on behalf of their clients. (*See* Defs.' Mem. at 16-17.) The CMEG Defendants cited these cases in their opening brief, and Plaintiff did nothing to address them. In fact, Plaintiff cites authority that contradicts her position, recognizing that floor brokers trade for their clients, not for the exchange. *See, e.g., In re Amaranth Natural Gas Commodities Litig.*, 587 F. Supp. 2d 513, 520, 541-43 (S.D.N.Y. 2008) (discussing conduct of floor brokers who executed trades for the party allegedly orchestrating a manipulative trading scheme).[6] Plaintiff's reliance on *CFTC v. Byrnes*, No. 13 Civ. 1174 (VSB) (S.D.N.Y. filed Feb. 21, 2013) is misplaced, as that case, which is still at the pleading stage, concerns whether NYMEX is liable for certain unauthorized conduct of one of its employees, which floor brokers are not.

Plaintiff also ignores that her Amended Complaint contradicts her vicarious liability claims. All that Plaintiff has alleged is that "NYMEX **and/or MFGI** contracted with **and/or** employed Floor Brokers and Clerks, John Does[] 1-20 whose job it was to properly execute trades on the Floor of the NYMEX." (Am. Compl. ¶ 171 (emphasis added).) To state a claim for

---

[6]  Plaintiff also seems to recognize that floor brokers execute trades on behalf of their accounts, not for NYMEX. (*See, e.g.*, Pl.'s Opp'n at 36 ("Joseph Welsh on behalf of MF Global and the NYMEX Floor brokers all of whom were directly purchasing and selling Futures Contracts for various account holders including potentially themselves.").)

vicarious liability, Plaintiff must allege facts to show that a principal-agent relationship exists. (Defs.' Mem. at 16.) The Amended Complaint is bereft of any factual allegations that would support a finding of a principal-agent relationship between NYMEX and the floor brokers. In fact, as the co-defendants in this action have also recognized, Plaintiff's Amended Complaint alleges that the floor brokers acted as agents of the Moore Defendants, not NYMEX. (*See, e.g.*, Moore Defendants' Memorandum of Law in Support of Their Motion to Dismiss, Mar. 31, 2014 (Dkt. No. 87) at 12.) The mere fact that floor brokers are required by law to be registered with the exchange on which they trade (as well as with the NFA) does not make them agents of that exchange. Floor brokers act on behalf of their clients, not the exchange.

## IV. PLAINTIFF'S NON-CEA CLAIMS AGAINST THE CMEG DEFENDANTS ARE LEGALLY DEFICIENT.

Because Plaintiff has failed to plead any facts to show that NYMEX acted in bad faith or to establish an agency relationship between NYMEX and the floor brokers, Plaintiff has failed to state any claim against the CMEG Defendants. Thus, it is unnecessary to reiterate all of the legal deficiencies in her various federal and state causes of action. (*See* Defs.' Mem. at 17-24.) It is worth noting, however, that Plaintiff has either abandoned some of these claims or has chosen not to address a number of the CMEG Defendants' arguments with respect to these claims.

For instance, Plaintiff does not address the fact that the Amended Complaint contains no factual allegations that the CMEG Defendants agreed or conspired with the Moore Defendants, a required element of her antitrust and RICO claims. (*See id.* 17-21.) Additionally, Plaintiff fails to address the CMEG Defendants' argument that all of her state law claims against them are preempted. (*See id.* at 21-22.) Plaintiff further fails to address the fact that she cannot state a claim for aiding and abetting a breach of fiduciary duty because a party's ***inaction*** can only

support such a claim if the party owes an independent duty, which NYMEX does not owe Plaintiff. (*See id.* at 23.)

Plaintiff does attempt to address some of the CMEG Defendants' other arguments, but she does so based on her incorrect interpretation of the law. Plaintiff again misstates New York law by contending that the Martin Act provides a private right of action (Pl.'s Opp'n at 70), a position that has been long rejected under settled authority. (*See* Defs.' Mem. at 23-24.) Plaintiff then argues that the New York deceptive trade practices act applies to commodities trading (Pl.'s Opp'n at 71), proffering incomprehensible distinctions from the CMEG Defendants' cited authorities that hold the opposite (*See* Defs.' Mem. at 24) and arguing that the question of whether that act applies to commodities trading somehow is a "question of fact." (Pl.'s Opp'n at 71.) Finally, Plaintiff continues to press her claim of intentional infliction of emotion distress, an argument that only underscores the frivolous nature of this lawsuit.

## <u>CONCLUSION</u>

For the foregoing reasons, as well as those stated in their opening brief, the CMEG Defendants respectfully request that this Court dismiss all claims asserted against them in this matter with prejudice and grant such other and further relief as the Court deems just and proper.

Dated: June 27, 2014                    Respectfully submitted,


                                        By: /s/ Chuck Smith
                                        Charles F. Smith, *pro hac vice*
                                        (charles.smith@skadden.com)
                                        SKADDEN, ARPS, SLATE, MEAGHER &
                                        FLOM LLP
                                        155 North Wacker Drive
                                        Chicago, IL 60606
                                        Tel: 312.407.0700
                                        Fax: 312.407.0411


                                        Jason T. Manning, *pro hac vice*
                                        (jason.mannting@skadden.com)
                                        Brandon R. Keel, *pro hac vice*
                                        (brandon.keel@skadden.com)
                                        155 North Wacker Drive
                                        Chicago, IL 60606
                                        Tel: 312.407.0700
                                        Fax: 312.407.0411


                                        Lauren E. Aguiar
                                        (lauren.aguiar@skadden.com)
                                        Four Times Square
                                        New York, NY 10036
                                        Tel: 212.735.2235
                                        Fax: 917.777.2235


                                        *Counsel for Defendants CME Group Inc.*
                                        *and New York Mercantile Exchange, Inc.*

11